UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AMERICAN EMPIRE SURPLUS LINES
INSURANCE COMPANY,

                    Plaintiff,

        -against-

DISANO DEMOLITION CO., INC., *et al,*

                    Defendants.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
18 CV 5047 (NGG) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

On September 6, 2018, plaintiff American Empire Surplus Lines Insurance Company ("American Empire") commenced this action against Disano Demolition Co., Inc. ("Disano"), seeking to recover premiums owed under Common General Liability Insurance Policies and Excess Liability Insurance Policies issued to Disano. Plaintiff also seeks a declaration that American Empire owes no duty to defend or indemnify the defendant under the American Empire policies for any occurrence, claim or suit which may have been reported to plaintiff. (Compl.[1] ¶¶ 23, 25, 26).

Currently pending before this Court are two separate motions to intervene – the first filed by Edgar Ventura on January 29, 2020, and the second filed by Un Lee and Yun Lee-Ito on February 13, 2020. Both motions to intervene were referred to the undersigned.

For the reasons set forth below, the Court respectfully recommends that the motions to intervene be denied.

---

[1] Citations to "Compl." refer to plaintiff's Complaint filed on September 6, 2018, ECF No. 1.

## FACTUAL AND PROCEDURAL BACKGROUND

As set forth in greater detail in this Court's Report and Recommendation, dated January 2, 2020, American Empire issued a Commercial General Liability insurance policy to Disano on July 6, 2016, to cover the period June 25, 2016 to July 25, 2017 (the "2016 Primary Policy").[2] (Held Aff.[3] ¶ 3). In addition to the 2016 Primary Policy, American Empire issued an Excess Liability insurance policy to Disano, bearing Policy No. 16CX0204629, that covered the period June 25, 2016 through July 25, 2017 (the "2016 Excess Policy"[4]). (Id. ¶ 10).

The premiums charged for both the 2016 Primary Policy and the 2016 Excess Policy were to be computed as a percentage of Disano's gross receipts for the policy period. (Held Aff. ¶¶ 4, 11). American Empire assigned an "Advance Premium" calculated on an estimate of Disano's gross receipts; this premium was subject to adjustment at the close of each audit period if the gross receipts exceeded the estimate. (Id. ¶¶ 5, 12, 13).

American Empire also issued a Commercial General Liability Policy for the period June 25, 2017 to July 25, 2018 (the "2017 Primary Policy"[5]), along with an Excess Liability Policy for the same period (the "2017 Excess Policy"[6]). (Id. ¶¶ 14-21). Similar to the 2016 Policies, the premiums for both the 2017 Primary and Excess Policies were calculated based on an estimate of Disano's gross receipts, with provisions for adjustment. (Id. ¶¶ 15-18, 22-24).

---

[2] Citations to "2016 Primary Policy" refer to the Commercial General Liability Policy, bearing Policy No. 16CG0204628, issued to Disano for the period June 25, 2016 to July 25, 2017, ECF No. 42-4. The Policy has an issue date of July 6, 2016, indicating the plaintiff issued the Policy with a retroactive coverage date beginning June 25, 2016.

[3] Citations to "Held Aff." refer to the Affidavit of T. Matthew Held in Support of Motion for Default Judgment, dated October 15, 2019, ECF No. 42-3.

[4] Citations to "2016 Excess Policy" refer to the Excess Liability Policy issued to Disano for June 25, 2016 to July 25, 2017, ECF No. 42-5.

[5] Citations to "2017 Primary Policy" refer to the Commercial General Liability Policy issued to Disano for June 25, 2017 to July 25, 2018, ECF No. 42-6.

[6] Citations to "2017 Excess Policy" refer to the Excess Liability Policy issued to Disano for June 25, 2017 to July 25, 2018, ECF No. 42-7.

Based on audits[7] conducted of Disano in 2017 and 2018, it was determined that Disano owed additional premiums totaling $216,394.00 on all four of the American Empire policies. (Id. ¶¶ 26, 27; see also Audit Endorsements[8]). According to the Affidavit of Mr. Held, American Empire had not received payment of any part of this amount as of the date of the Affidavit. (Id. ¶ 28).

On September 6, 2018, American Empire filed the initial Complaint in this action, seeking to recover unpaid premiums owed by Disano. Thereafter, on November 2, 2018, plaintiff filed an Amended Complaint, naming various additional parties; defendants filed an Answer and Counterclaim on November 9, 2018. On April 29, 2019, plaintiff filed a Second Amended Complaint,[9] seeking damages in the amount of $216,394.00 in unpaid premiums, and a declaratory judgment that plaintiff had no duty to indemnify or defend. (Pl.'s Sec. Am. Compl. ¶¶ 31, 35, 38; O'Connor Aff.[10] ¶ 5). Disano was served with copies of the Second Amended Complaint and Summons on May 6, 2019, and thereafter on May 23, 2019, this Court granted Disano's counsel's motion to withdraw. (O'Connor Aff. ¶¶ 6, 7; 5/23/2019 Order[11]). Although Disano was given an extended deadline to obtain new counsel and to file an Answer, no new counsel appeared and a Certificate of Default was entered by the Clerk of Court.[12]

---

[7] The audits were conducted by Overland Solutions, Inc., on behalf of American Empire, on or about March 7, 2017, November 27, 2017, February 27, 2018, and October 24, 2018, to determine gross receipts during the policy periods. (Id. ¶ 25).

[8] The Audit Endorsements are attached as Exhibit 5 to plaintiff's Motion for Default Judgment, ECF No. 42-8, filed October 23, 2019.

[9] In the Amended Complaint filed on November 2, 2018, plaintiff named as additional defendants Angel Coro, Shamayim LLC, and Etminan LLC. When plaintiff filed its Second Amended Complaint on April 29, 2019 ("Sec. Am. Compl."), the claims against these defendants were eliminated from the pleading, and accordingly, the Honorable Nicholas G. Garaufis issued an Order dated April 25, 2019, considering their deletion to constitute a dismissal without prejudice. ECF No. 28.

[10] Citations to "O'Connor Aff." refer to the Affirmation of Maureen E. O'Connor in Support of Motion for Default, dated October 23, 2019, ECF No. 42-1.

[11] ECF No. 36.

[12] ECF No. 38.

Thereafter, on October 23, 2019, plaintiff moved for entry of a default judgment, which motion was referred to the undersigned to conduct an inquest and prepare a Report and Recommendation.[13]

On January 2, 2020, this Court issued its Report and Recommendation, recommending that a default judgment enter in favor of plaintiff American Empire in the amount of $216,394.00. (R&R[14] at 10). The Report also recommended that a declaration issue declaring that American Empire had no duty to indemnify or defend Disano for any claims brought under the 2016 and 2017 Primary and Excess Policies.

On January 29, 2020, Edgar Ventura filed a letter application with this Court, seeking to intervene in the current action and to file an objection to this Court's Report and Recommendation. On February 13, 2020, Un Lee and Yun Lee-Ito sought to intervene as well in this action and to file an objection to the Court's Report of January 2, 2020. Both motions to intervene were referred to the undersigned.

DISCUSSION

A. The Motions to Intervene

According to the letter motion to intervene submitted by Edgar Ventura, Mr. Ventura suffered "permanent and life-altering injuries" on October 27, 2017, when he fell approximately 20 feet from a roof while performing construction on property owned by the other proposed

---

[13] See Electronic Order Referring Motion, dated September 27, 2019.
[14] Citations to "R&R" refer to this Court's Report and Recommendation, dated January 2, 2020, ECF No. 44.

4

intervenors, Un Lee and Yun Lee-Ito. (Ventura Ltr.[15] at 1; Ventura Compl.[16] ¶¶ 35, 36-44). On November 7, 2017, Mr. Ventura brought an action in New York Supreme Court, Queens County, Index # 715549/2017, alleging that his injuries were due to the negligence of the general contractor, Disano, and the property owners and managers, Un Lee and Yun Lee-Ito,[17] in failing to provide adequate safety equipment, safeguards, lifelines or fall protection. (Ventura Compl. ¶¶ 5, 6, 10, 12, 13, 14, 16, 17, 30, 32, 37, 38, 39, 40).

Mr. Ventura contends that American Empire contracted to provide primary and excess insurance to Disano to the extent of $2,000,000 and that under the policies, American Empire is obligated to defend and indemnify the other uninsured defendants, Un Lee and Yun Lee-Ito, in the personal injury action. (Ventura Ltr. at 1, Ex. B). According to Mr. Ventura, American Empire had extended settlement offers in the underlying Queens state court action, only to withdraw them following the issuance of this Court's January 2, 2020 Report and Recommendation. (Id.) He contends that this withdrawal of a settlement offer has prejudiced Un Lee and Yun Lee-Ito, who are uninsured without the American Empire indemnity, as well as Disano and Nationwide Indemnity Insurance Company ("Nationwide"), which provides coverage to Disano upon exhaustion of the American Empire policy limits. (Id.) Thus, Mr. Ventura seeks to intervene and seeks an extension of the deadline to object to this Court's Report and Recommendation. (Id. at 2).

---

[15] Citations to "Ventura Ltr." refer to the January 29, 2020 letter Application for leave to Intervene in USDC EDNY 18-Cv-5047 and Object to the January 2, 2020 Report and Recommendation of Magistrate Pollak, ECF No. 47.

[16] Citations to "Ventura Compl." refer to the Verified Complaint filed by Edgar Ventura, in Queens County Supreme Court on November 7, 2017, attached as Ex. A to the Ventura Ltr. (the "Queens action").

[17] Plaintiff also names Celatech Construction Corp. as a defendant in the Queens action.

5

Un Lee and Yun Lee-Ito (collectively, the "Lees") also seek leave to intervene and file objections to this Court's Report and Recommendation. (Lee Feb. 20, 2020 Ltr.[18] at 1). In their letter motion, the Lees assert that they are entitled to collect policy proceeds plus interest and attorney's fees from American Empire upon receiving a judgment against Disano in the underlying action. (Id.) Therefore, they claim they were prejudiced through denial of the opportunity to oppose the default motion and in particular the request for declaratory relief. (Id. at 2). The Lees similarly seek leave to intervene and to object to the Report and Recommendation.

B. Legal Standard

1) Intervention as of Right

Rule 24(a)(2) of the Federal Rules of Civil Procedure provides that the court must permit anyone to intervene who "claims an interest relating to the property or transaction that is subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The Second Circuit has described intervention as "a procedural device that attempts to accommodate two competing policies: efficiently administrating legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand." Floyd v. City of New York, 770 F.3d 1051, 1057 (2d Cir. 2014). There is significant "tension that exists between these dual concerns" and thus, an intervention determination is fact-intensive and "prior decisions are not always reliable guides." Id.

---

[18] Citations to "Lee Feb. 20, 2020 Ltr." refer to the letter filed on February 20, 2020 on behalf of Un Lee and Yun Lee-Ito, ECF No. 51.

In order to intervene as of right pursuant to Rule 24(a)(2), "the applicant must: (1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action." In re Holocaust Victim Assets Litig., 225 F.3d 191, 197 (2d Cir. 2000); see also St. John's Univ. v. Bolton, 450 F. App'x 81, 83 (2d Cir. 2011) (discussing and applying a similar test). Courts have held that a "[f]ailure to meet any of these requirements suffices for a denial of the motion." In re Bernard L. Madoff Inv. Secs., LLC, Nos. 13 CV 1300, 13 CV 2447, 2013 WL 4778163, at *2 (S.D.N.Y. Sept. 6, 2013) (quoting In re Holocaust Victim Assets Litig., 225 F.3d at 197).

In determining whether a motion to intervene is timely, the court is instructed to take into account "'all of the circumstances,' including when intervenors discovered there was a need to intervene and the procedural posture of the case." NYTDA, Inc. v. City of New York, No. 11 CV 1836, 2014 WL 4274219, at *4 (E.D.N.Y. Aug. 28, 2014) (citing Turkmen v. Ashcroft, No. 02 CV 2307, 2010 WL 3398965 (E.D.N.Y. June 30, 2010), report and recommendation adopted by 2010 WL 3398968 (E.D.N.Y. Aug. 26, 2010)). The Court should consider "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." Id. at *3 (citing United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994)); see also Frankel v. Cole, 490 F. App'x. 407, 408 (2d Cir. 2013). "The decision whether to deny a motion to intervene on the ground that it is untimely is committed to the sound discretion of the district court." Frankel v. Cole, 490 F. App'x. at 408.

In considering whether the applicant has met the second requirement to intervene under

7

Rule 24(a), courts first analyze whether the applicant's interest in the litigation is "direct, substantial, and legally protectable." Bridgeport Guardians, Inc. v. Delmonte, 602 F.3d 469, 473 (2d Cir. 2010). When "[a]n interest . . . is remote from the subject matter of the proceeding, or . . . is contingent upon the occurrence of a sequence of events before it becomes colorable," intervention should be denied. Floyd v. City of New York, 770 F.3d at 1060. Once the court determines that there is a cognizable interest in the litigation, the court then requires the applicant to rebut the presumption of adequate representation by the party already in the action. See Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 179-80 (2d Cir. 2001) (citing U.S. Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978)). To meet the third and fourth interest requirements under Rule 24(a), the Second Circuit has "demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." Id. at 179 (citing cases).

2) Permissive Intervention

Under Federal Rule of Civil Procedure 24(b)(1)(B), anyone whose claims share the same legal and factual issues presented by the claims or defenses may be allowed to intervene permissively. Rule 24(b)(1)(B) provides: "On timely motion, the court may permit anyone to intervene who: . . . has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). Courts "consider substantially the same factors" for permissive intervention under FRCP 24(b) as they do for intervention of right under FRCP 24(a). R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp., 467 F.3d 238, 240 (2d Cir. 2006) (internal citation omitted); Harris-Clemons v. Charly Trademarks Ltd., 751 F. App'x 83, 85 (2d Cir. 2018).

8

In determining the appropriateness of permissive intervention, it is "well-settled that the principal consideration in either granting or denying an application for permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" Citizens for an Orderly Energy Policy, Inc. v. Suffolk County, 101 F.R.D. 497, 502 (E.D.N.Y. 1984) (quoting U.S. Postal Service v. Brennan, 579 F.2d at 191); see also Apple v. Atlantic Yards Dev. Co., LLC, No. 11 CV 5550, 2014 WL 5450030, at *4 (E.D.N.Y. Oct. 27, 2014) (citing U.S. Postal Service v. Brennan, 579 F.2d at 192). Additionally, a court may consider "whether the interven[o]r's participation will contribute to the just and equitable adjudication of the issues, and whether the interven[o]r's interests are adequately represented by the parties of the record." Citizens for an Orderly Energy Policy, Inc. v. Suffolk County, 101 F.R.D. at 502.

C. Analysis – Ventura Motion to Intervene

The first factor to consider under Rule 24(a) is the timeliness of the motion to intervene. In moving to intervene, Mr. Ventura's counsel states that they did not learn that American Empire was seeking to disclaim coverage or that this federal declaratory judgment action had been filed until they received a letter from American Empire's counsel on January 22, 2020, advising them of these facts. (Ventura Ltr. at 1). Their letter motion to intervene was filed shortly thereafter on January 29, 2020. This relatively brief period between notice of the interest and the motion to intervene supports a finding that the motion was timely. American Empire does not assert, and the Court can find no reason why, Mr. Ventura should have been on constructive notice of the claim earlier. As to whether Mr. Ventura's intervention should be deemed untimely due to the procedural posture of the case or prejudice to existing parties, the

Court notes that Mr. Ventura seeks to intervene in order to object to the Report and Recommendation, to which American Empire has objected already.  (Am. Emp. Obj.[19]).  As the Report and Recommendation is already subject to <u>de novo</u> review on this account, objections from another party will not unduly prejudice American Empire or Disano.  Therefore, as to timeliness, the relevant factors weigh in Mr. Ventura's favor.

American Empire argues that Mr. Ventura has no standing to intervene because he has no ripe interest relating to the American Empire Policies and the issues he raises do not share a common question of law or fact with the claims made in this federal action.  (Am. Emp. Opp.[20] at 4).  However, "standing to sue and the right of intervention are by no means the same thing." <u>United States v. City of New York</u>, 179 F.R.D. 373, 377 (E.D.N.Y. 1998).  The Second Circuit has held that when the existence of a case or controversy has already been established as between the original parties to a case, there is no need to impose an independent standing requirement on the proposed intervenor.  <u>See</u> <u>United States Postal Service v. Brennan</u>, 579 F.2d 188, 190 (2d Cir. 1978).  A party seeking to intervene needs only to show "an interest which practically speaking can only be protected through intervention in the current proceeding." <u>United States v. City of New York</u>, 179 F.R.D. at 378 (quoting <u>Norwalk Core v. Norwalk Bd. of Ed.</u>, 298 F. Supp. 208, 210 (D. Conn. 1968)).  Such an interest will satisfy the requirement of "an interest relating to the property or transaction which is the subject of the action." FED. R. CIV. P. 24(a)(2). The Court therefore addresses American Empire's arguments to the extent they are understood to challenge  Mr. Ventura's cognizable interest relating to the insurance policies at issue in this case.

---

[19] Citations to "Am. Emp. Obj." refer to the January 15, 2020 Objection to Report and Recommendations, ECF No. 45.

[20] Citations to "Am. Emp. Opp." refer to American Empire's Memorandum of Law in Opposition to Edgar Ventura's Motion to Intervene, filed February 14, 2020, ECF No. 52.

Under N.Y. Insurance Law § 3420, a personal injury claimant must first obtain judgment against a tortfeasor, and then fail to receive payment from the tortfeasor for 30 days, before they may seek judgment against the tortfeasor's insurer. See Lang v. Hanover Ins. Co., 3 N.Y.3d 350, 354, 820 N.E.2d 855, 858, 787 N.Y.S.2d 211, 214 (2004) (holding that "[c]ompliance with these requirements [of Section 3420] is a condition precedent to a direct action against the insurance company"). Further, courts in this district have held that, before such a judgment issues, a personal injury claimant does not have a cognizable interest in a suit for rescission of an insurance policy that arguably covers the injury, because any such interest is still "premised upon a double contingency." See National Fire Ins. Co. v. Starbro Const. Corp., No. 08 CV 3200, 2009 WL 2602281, at *4 (E.D.N.Y. Aug. 24, 2009) (internal quotations omitted).

In National Fire Insurance Co. v. Starbro Construction Corp., the court held that a personal injury claimant lacked a protectable interest in the insurer's suit for declaratory judgment against the insured, because the claimant's interest was contingent on satisfaction of the two requirements of Section 3420, neither of which had yet been fulfilled. See id; see also Hartford Fire Ins. Co. v. Mitlof, 123 F. Supp. 2d 762, 771 (S.D.N.Y. 2000) (holding that the personal injury claimant was "barred by N.Y. Ins. Law § 3420 from intervening" in a declaratory judgment action under either Rule 24(a) or 24(b)).

Following the sound reasoning of these authorities, this Court finds that Mr. Ventura lacks an interest in the instant litigation sufficient to satisfy the requirements of Rule 24(a). The underlying personal injury action in the state court is still ongoing and there has been no determination of liability on the part of the insureds in this case. Thus, Mr. Ventura is unable to satisfy the requirements of Section 3420 and his interest in American Empire's declaratory judgment action against the insureds remains contingent on his ability to obtain a judgment in

11

the underlying personal injury case. Since Mr. Ventura's interest in this federal action is not yet "direct, substantial, and legally protectable," under New York's Insurance Law, he has not satisfied the requirements of Rule 24(a) that would require his intervention as of right or that would authorize permissive intervention under Rule 24(b). Bridgeport Guardians, Inc. v. Delmonte, 602 F.3d at 473; see also Hartford Fire Ins. Co. v. Mitlof, 123 F. Supp. 2d at 770.[21]

Mr. Ventura contends that American Empire failed to demonstrate that it issued a timely notice of disclaimer of coverage to the insured and the injured parties as required by Insurance Law § 3420(d)(2). Mr. Ventura argues that in the absence of a properly issued disclaimer letter, American Empire has waived its policy defenses and its right to rely upon policy exclusions and breaches of the policy. (Ventura Ltr. at 2 (citing Hartford Ins. Co. v. County of Nassau, 46 N.Y.2d 1028 (1979))). To the extent that Mr. Ventura's argument regarding the disclaimer may be construed to urge that American Empire is barred as a threshold matter from relying on Section 3420 to dispute his present interest in the litigation (id.), the remedy for unreasonable failure to issue a disclaimer is an order precluding the insurer from disclaiming liability in the action. See Defebio v. Allstate Ins. Co., No. 16 CV 5735, 2018 WL 4689131, at *6 (E.D.N.Y. Sept. 28, 2018). This remedy accrues to the insured in the first instance. Again, a personal injury claimant still has no enforceable right until after obtaining judgment. Thus, American Empire's failure to disclaim does not provide Mr. Ventura with a legally protectable interest in the litigation where one would not otherwise exist under Section 3420.

As for Mr. Ventura's other arguments, counsel contends that a default should not enter

---

[21] Although a decision to allow permissive intervention is within the Court's sound discretion, for the Court to allow Mr. Ventura's intervention under Rule 24(b) would circumvent the judgment requirement of Section 3420, "creating a right not contemplated by the state legislature." Hartford Fire Ins. Co. v. Mitlof, 123 F.Supp.2d at 770. Therefore, the Court respectfully recommends that Mr. Ventura's motion for permissive intervention be denied as well.

because American Empire failed to demonstrate that it issued a timely notice for cancellation of the policy prior to the date of loss, based on Disano's failure to pay premiums. (Ventura Ltr. at 2). Mr. Ventura contends that under the terms of the Policies, and under New York State Insurance Law § 3426(c)(5), and Banking Law § 576, such notice of cancellation is required. (Id.) Mr. Ventura argues that when the insurer fails to abide by the statutory requirements for cancellation, the policy remains in effect indefinitely even when premiums have not been paid. (Id. (citing Worldwide Underwriters Ins. Co. v. Lumbermans Mut. Casualty Co., 181 A.D.2d 784, 581 N.Y.S2d 93 (2d Dep't 1991); Zeman v. Zack Agency, Inc., 75 A.D.2d 261, 264, 429 N.Y.S.2d 444 (2d Dep't 1980))).

To the extent that the parties contest whether American Empire satisfied the cancellation requirements and the disclaimer requirements, these arguments go to the merits of whether American Empire is entitled to rescission of the Policies and whether it can ultimately be found liable to Mr. Ventura. Consequently, the arguments are not properly considered on a motion to intervene. See XL Specialty Ins. Co. v. Lakian, 632 F. App'x 667, 669 (2d Cir. 2015) (reversing district court for abuse of discretion where it looked to terms of insurance policy in denying motion to intervene); Oneida Indian Nation of Wisc. v. State of New York, 732 F.2d 261, 265 (2d Cir. 1984) (holding that "an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention").

Accordingly, because the Court finds that Mr. Ventura lacks a direct, substantial, and legally protectable interest in this matter, the Court respectfully recommends that his motion to intervene as of right and his motion for permissive intervention be denied.

C. Analysis – The Lees' Motion to Intervene

1) Intervention

The Lees, who are both named as defendants in Mr. Ventura's personal injury action in Queens Supreme Court, also move to intervene under both Fed. R. Civ. P. 24(a)(2) and 24(b)(1)(B). (Lee Feb.13, 2020 Ltr.[22] at 2). The Lees contend that neither they nor Nationwide, Disano's excess carrier, were named as parties to this federal action, nor did they learn about the declaratory judgment action to disclaim coverage under the American Empire policies until counsel for American Empire filed a letter on January 22, 2020. (Id.) Nevertheless, they assert that American Empire was aware that the Lees were seeking defense and indemnification from Disano and its insurer, and in fact, denied the Lees' request in 2019. (Lee Reply[23] at 2). The Lees' letter, filed two weeks after Mr. Ventura's, was not contested as untimely. Therefore, for the reasons stated above (see discussion supra at 9–10), the Court finds that the relevant factors weigh in the Lees' favor as to timeliness.

The Lees contend that they have an "'economic interest that is concrete and related to the underlying subject matter of [this] action,'" (id. at 3 (quoting United States v. Alisal Water Corp., 370 F.3d 915, 920 (9th Cir. 2004))), and that under N.Y. Ins. Law § 3420, they have the right to collect from American Empire and Nationwide the full policy proceeds upon receiving a judgment against Disano in the Ventura personal injury action. (Lee Feb. 20, 2020 Ltr. at 1).

American Empire responds that, like Mr. Ventura, the Lees lack standing to intervene because they have no ripe interest in the American Empire Policies that are the subject of this

---

[22] Citations to "Lee Feb. 13, 2020 Ltr." refer to the letter filed on February 13, 2020 on behalf of Un Lee and Yun Lee-Ito, seeking leave to intervene and object to this Court's Report and Recommendation, ECF No 51.

[23] Citations to "Lee Reply" refer to the Lees' Memorandum of Law In Reply to Plaintiff's Opposition to Un Lee and Yun Lee-Ito's Application to Intervene Herein, dated March 11, 2020, ECF No. 60).

14

federal declaratory judgment action, noting that the Lees' papers acknowledge that they have an independent right of collection from the insurers "*'upon receiving a judgment against Disano in the Ventura personal injury action.'*" (Am. Emp. Opp.2[24] at 3 (quoting Lee Feb. 13, 2020 Ltr. at 2) (emphasis in original)). American Empire argues that, as such, the application filed by the Lees recognizes that at this point in time, the Lees, like Mr. Ventura, have no standing to intervene because the personal injury action is still ongoing and there is no judgment to collect against the insurer.[25] (Id. at 4).

Under Rule 24, the Lees have not established a direct interest in the instant litigation. The Lees must first be found liable in the Ventura action in order to establish a cognizable interest in enforcement of the Policies. See B &A Demolition and Removal, Inc. v. Markel Ins. Co., 818 F. Supp. 2d 592, 596 (E.D.N.Y. 2011) (holding that proposed intervenor had inchoate interest in suit because no judgment had been entered in underlying lawsuit). They also must establish that they sought and obtained a judgment of contribution from Disano and that payment was not received within 30 days. N.Y. Ins. Law § 3420. When these three contingencies have been met, the Lees may bring an action against American Empire. Until then, they lack an interest sufficient to support intervention. See B &A Demolition and Removal, Inc. v. Markel Ins. Co., 818 F. Supp. 2d at 596 ; see also National Fire Ins. Co. v. Starbro Const. Corp., 2009 WL 2602281, at *4; Floyd v. City of New York, 770 F.3d at 1051 (holding that when an interest "is contingent upon the occurrence of a sequence of events before it becomes colorable," intervention should be denied).

---

[24] Citations to "Am. Emp. Opp.2" refer to American Empire's Memorandum of Law in Opposition to Un Lee and Yun Lee-Ito's Motions to Intervene, filed on March 4, 2020, ECF No. 58.

[25] As explained above, see supra at 10, the requirements for intervention as of right are different from the requirements for Article III standing. To the extent American Empire is understood to argue that the Lees' interest is insufficient to justify intervention under the second prong of Rule 24(a)(2), that argument is addressed herein.

15

Alternatively, the Lees could establish a cognizable interest by showing that they are additional insureds under the Policies. See Illinois Union Ins. Co. v. Acer Restoration LLC, No. 20 CV 1086, 2020 WL 5876248, at *3 (S.D.N.Y. Oct. 2, 2020). The 2017 Primary Policy defines an additional insured as "[a]ny person or organization where required by written contract to be added as an additional insured." [26] (2017 Primary Policy at 40). The contract the Lees have provided states only that Disano must defend and indemnify the Lees, not that the Lees will be additional insureds under the 2017 Policies. (Contract[27] at 2). The contract is silent as to whether Disano must add the Lees as additional insureds under the American Empire Policies. Cf. Lighton Industries, Inc. v. Allied World Nat'l Assurance Co., 348 F. Supp. 3d 167, 195 (E.D.N.Y. Sept. 28, 2018) (holding that additional insured status was established where insured was contractually required to name third party as an additional insured on existing policy). Therefore, the Lees fail to demonstrate a direct interest in the 2017 Policies sufficient to support intervention as additional insureds. See Illinois Union Ins. Co. v. Acer Restoration LLC, 2020 WL 5876248, at *3 (holding that proposed intervenors lacked cognizable interest where contract failed to show they were additional insureds).

As with the Ventura motion, the Lees raise substantive issues that go to the ultimate question of whether American Empire must defend and indemnify Disano on the 2017 Primary and Excess Policies. Arguments as to the timeliness of disclaimer and the legal effect of Disano's alleged failure to pay audited premiums are not properly decided at this juncture, as discussed supra at 13. More importantly, these arguments only become relevant if the Lees are

---

[26] The injury giving rise to the Ventura action occurred on October 27, 2017. See supra at 4. The 2017 Policies went into effect on July 25, 2017, the same date that the 2016 Policies expired. See supra, n. 2, 4, 5 and 6. Therefore, only the 2017 Policies are at issue in the Ventura action. The Court considers only the terms of those Policies with respect to the instant motion.

[27] Citations to "Contract" refer to the contract signed by Anna Maria Oppedisano on behalf of Disano and Un Lee, ECF No. 47-2.

16

found liable in the Ventura action and successfully seek contribution from Disano.

The Lees argue, as did Mr. Ventura, that American Empire's disclaimer is a nullity because American Empire failed to issue a timely disclaimer, and failed to issue a timely notice of cancellation in compliance with New York State Insurance Law, Banking Law and the policy terms. (Id.) The Lees also contend that American Empire has not demonstrated that a failure to pay "audited" premiums retroactively is grounds for terminating the Policies and disclaiming the duty to defend and indemnify. (Lee Feb. 20, 2020 Ltr. at 2). However, as the Lees are not additional insureds under the 2017 Policies, they lack a direct interest sufficient to justify intervention on these grounds.

According to the Lees, since they were never served or named in this federal action, any judgment entered here would not collaterally estop Mr. Ventura from recovering a judgment. (Lee Feb. 13, 2020 Ltr. at 2 (citing Gramatan Home Invs. Corp. v. Lopez, 46 N.Y.2d 481, 414 N.Y.S.2d 308, 386 N.E.2d 1328 (1979))). Moreover, the Lees argue that since Disano defaulted, the issues in the case were not actually litigated and therefore, the default judgment is irrelevant to American Empire's obligations to the injured parties in the Ventura action. (Id. at 3). Again, these arguments rest on the triple contingency of the Lees being found liable to Mr. Ventura, successfully obtaining judgment against Disano, and failing to receive payment from Mr. Disano within 30 days. These arguments also fail to establish an interest sufficient to justify intervention.

Therefore, the Court finds that the Lees lack a direct, substantial, and legally protectable interest in the instant litigation. They also have failed to establish an interest sufficient to justify permissive intervention. Accordingly, the Court respectfully recommends that their motion to intervene be denied.

2) Need for a Stay

In their Reply Memorandum, the Lees cite cases where the federal courts have stayed declaratory judgment actions or declined to exercise jurisdiction based on the finding that the issues raised in the declaratory judgment action would turn on or be resolved in part by the determination of liability in the underlying action. (Lee Reply at 7 (citing cases)). However, in the cases cited, the insurer's basis for disclaiming liability arose directly from the conduct giving rise to the underlying actions. See Federal Ins. Co. v. Weinstein, 18 CV 2526, 2019 WL 1407455, at *4 (S.D.N.Y. Mar. 28, 2019) (granting stay where insurer's duty to indemnify for criminal defense depended on facts found in underlying prosecution of insured); Lafarge Canada Inc. v. American Home Assurance Co., No. 15 CV 8957, 2018 WL 1634135, at *10 (S.D.N.Y. Mar. 31, 2018) (staying case where plaintiff insured sought declaratory judgment that coverage extended to conduct in underlying tort action). Here, American Empire seeks to disclaim all liability on the Policies on the basis of conduct unrelated to the underlying personal injury suit. There is nothing in the underlying personal injury action that would be relevant to the question posed in this federal action – namely, whether Disano failed to pay the premiums owed under the Policies. Therefore, the Court declines to recommend abstention or a stay in this case.

Accordingly, the Court respectfully recommends that the Lees' motion for intervention be denied. The Court further recommends that there would be no benefit to staying this federal action which would not be impacted by any factual determinations made in state court.

CONCLUSION

For the reasons stated above, the Court respectfully recommends that the motions to intervene be denied.

Any objections to this Report and Recommendation must be filed with the Clerk of Court, with a copy to the undersigned, within fourteen (14) days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
November 12, 2020

/s/ Cheryl L. Pollak
Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York